UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAROL LOVE,

                                    Case No. No. 12-14431

               Plaintiff,                District Judge Lawrence P. Zatkoff

v.                                    Magistrate Judge R. Steven Whalen

COMMISSIONER OF
SOCIAL SECURITY,

               Defendant.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff Carol Love brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits under Title II of the Social Security Act.   Parties have filed cross motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).  For the reasons set forth below,  I recommend that Defendant's Motion for Summary Judgment be GRANTED [Docket #14] and that Plaintiff's Motion for Summary Judgment be DENIED [Docket #9].

**I.  PROCEDURAL HISTORY**

Plaintiff applied for Disability Insurance Benefits ("DIB") on December 21, 2009, alleging disability as of February 9, 2009 (Tr. 119-125).  Upon initial denial of the claim, Plaintiff requested an administrative hearing, held on June 15, 2011 in Flint, Michigan before

Administrative Law Judge ("ALJ") Regina Sobrino (Tr. 35). Plaintiff, represented by attorney Mikel Lupisella, testified, (Tr. 40-47), as did vocational expert ("VE") Timothy Shaner (Tr. 47-50). On June 28, 2011, ALJ Sobrino found Plaintiff not disabled (Tr. 31).

On August 31, 2012, the Appeals Council declined to review the administrative decision (Tr. 1-7). Plaintiff filed suit in this Court on October 6, 2012.

## II. BACKGROUND FACTS

Plaintiff, born June 21, 1957, was one week short of her 56th birthday at the time of the administrative decision (Tr. 31, 119). She completed two years of college and worked previously as an automotive production worker (Tr. 143, 145). She alleges disability as a result of herniated discs, bulging discs, and bilateral carpal tunnel syndrome ("CTS") (Tr. 142).

### A. Plaintiff's Testimony

*Plaintiff's attorney prefaced his client's testimony by stating that Plaintiff had not worked since February 9, 2009 and had since been approved for a General Motors pension* (Tr. 39).

Plaintiff offered the following testimony:

Plaintiff currently lived in a single family home with her daughter (Tr. 40). She stopped working after her employer was unable to find a job for her that would accommodate her physical restrictions (Tr. 40). She last worked as a job setter (Tr. 40-41). After the

-2-

position was phased out, she was assigned to another position but was unable to perform the "gripping and grasping" requirements of the new job (Tr. 41).

Plaintiff was unable to sit, stand, or walk for more than 15 minutes due to left leg numbness and hip and back pain (Tr. 41).   She was unable to lift more than 10 pounds and experienced difficulty grasping small objects (Tr. 42).  She also experienced limitations in reaching, bending, and crouching (Tr. 43).  Knee pain created difficulty climbing stairs (Tr. 43).

Physical limitations prevented Plaintiff from performing household chores more than "once every three or four months" (Tr. 43).  Her shopping activity was limited to buying clothes (Tr. 44).  She visited regularly with friends or relatives but did not know whether she engaged in hobbies (Tr. 44).  She experienced problems in self care activities and did not perform yard work (Tr. 44).  She was able to drive to doctors' appointments, the mall, and religious gatherings twice a week (Tr. 44).  She denied taking any medication (Tr. 45).

Since becoming disabled, Plaintiff took a bus trip to New York for a religious event (Tr. 45).  She denied overnight hospital visits or emergency treatment since becoming disabled (Tr. 45).  She visited her treating physician "occasionally" but had discontinued seeing a neurologist who had been treating her for neck, hand, leg, and back pain (Tr. 46). She discontinued prescription pain medication after it made her "groggy" (Tr. 46).  She denied hand surgery but stated that she used wrist braces at night (Tr. 47).  In response to questioning by her attorney, Plaintiff reiterated that she had been prescribed pain medication

-3-

but declined to take it due to the side effect of drowsiness (Tr. 47).

**B.  Medical Records**[1]

### 1.  Records Pertaining to Plaintiff's Treatment

General Motors examination records from March, 2008 state that Plaintiff was advised to use a cold compress for shoulder pain (Tr. 192-193).  The following month, she was precluded from work requiring bilateral "forceful" gripping or grasping (Tr. 194).  She was advised to take Aleve for elbow and shoulder pain (Tr. 197).  June, 2008 records state that she was prescribed Naproxen for shoulder pain and tendinitis (Tr. 203).  In August, 2008, Plaintiff reported swelling consistent with CTS, but demonstrated a full range of finger and wrist motion (Tr. 211).  She reported taking Aleve to reduce swelling (Tr. 211).  Later the same month, Plaintiff reported worsening symptoms, including nighttime wrist and hand pain  (Tr. 216).  She indicated that splints were no longer effective in controlling wrist and hand symptoms (Tr. 216).  September, 2008 treatment notes state that Plaintiff's demeanor "suggest[ed] that she was not putting out maximal effort during pinch/grip testing" (Tr. 223).

In January, 2009, Plaintiff told treating physician Sattar Syed, M.D. that her neck condition was improving (Tr. 246).  A July, 2009 MRI of the cervical spine showed mild disc protrusion at C4-C5 without nerve root involvement (Tr. 261).   July, 2009 physical therapy intake notes state that Plaintiff experienced the onset of left arm pain in the last two to three

---

[1]Records created significantly before alleged onset of disability date have been reviewed but are omitted from the present discussion.

months and low back and neck pain for approximately one year (Tr. 174). Ralph McFarland, P.T. noted "significant tightness" in the upper extremities and weakness of the core trunk muscles (Tr. 175). The following month, neurologist Nael M. Tarakji, M.D. noted Plaintiff's complaints of back and neck pain but observed "normal tone, bulk and muscle strength of all muscle groups at 5/5" (Tr. 183). He recommended that she continue taking Ultram, Lyrica, and Naprosyn and kept her "off work" pending an MRI study of the lumbar spine (Tr. 184). An MRI performed the same month showed "minimal facet arthropathy at L4-L5" and the absence of disc herniation (Tr. 182). Imaging studies of the brain were unremarkable (Tr. 179-181). In September, 2009 Dr. Tarakji opined that Plaintiff's degenerative cervical and lumbar spine disease symptoms were "aggravated by her work" (Tr. 299). He stated that he would "support her application" for permanent disability from her work at General Motors (Tr. 299). In October, 2009 Dr. Sattar stated that Plaintiff's neck and back pain were "much better," opining that she did not require physical therapy (Tr. 278). In December, 2009, Dr. Sattar noted Plaintiff's reports of improving back pain but worsening neck and right arm discomfort (Tr. 267).

In February, 2010, Dr. Sattar noted that a recent EKG was unremarkable (Tr. 269). Physical therapy notes from the same month state that Plaintiff's cervical spine pain was reduced from an "8-9" level on a scale of 1 to 10 to a "5-6" (Tr. 274). A March, 2010 EMG showed "mildly" abnormal results (Tr. 297). Dr. Tarakji's September, 2010 notes state that Plaintiff experienced tingling and numbness of the hands (Tr. 295). He administered a

trigger point injection and recommended that Plaintiff continue physical therapy (Tr. 295).

## 2. Non-Treating Sources

In April, 2010, Neil A. Friedman, M.D. performed a consultative examination of Plaintiff on behalf of the SSA (Tr. 282-290). He noted Plaintiff's statement that she did not take prescribed pain medication because they made her drowsy (Tr. 286-287). Dr. Friedman noted a full range of cervical motion (Tr. 287). He opined that decreased grip strength was "due to apparent submaximal effort" (Tr. 287). He observed Plaintiff walking with "a minimal limp to the left" in the examining room, but "a normal, smooth brisk gait without limp" after leaving the building (Tr. 287). He concluded that Plaintiff was capable of working eight hours a day, restricted only by "the avoidance of repetitive forceful gripping or use of vibrating power tools with the right hand" (Tr. 288).

## 3. Material Submitted After the June 21, 2011 Administrative Decision

In March, 2011, Dr. Sattar's treating notes indicate that Plaintiff was "feeling better" (Tr. 309). A May, 2011 EMG of the upper extremities was unremarkable (Tr. 305-306).[2]

---

[2]

Where, as here, the Appeals Council denies a claimant's request for a review of an application based on new material (Tr. 1-7), the district court cannot consider that new evidence in deciding whether to "uphold, modify, or reverse the ALJ's decision." *Cotton v. Sullivan,* 2 F.3d 692, 696-696 (6th Cir.1993). Sentence six of 42 U.S.C. § 405(g) states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but *only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding* ..." (emphasis added). Hence, this Court may consider the additional evidence only for purposes of determining whether remand is appropriate under the sixth sentence of

## C. Vocational Testimony

VE Shaner classified Plaintiff's past work as a job setter as exertionally light and skilled[3] (Tr. 48). He found that the job did not have transferable skills (Tr. 48). The ALJ posed the following question to the VE, taking into account Plaintiff's age, education, and limited work experience:

> [A]ssume a person who's limited to lifting, carrying, pushing, and pulling no more than five pounds frequently, and no more than 10 pounds occasionally. The person should be able to use both hands to do those things. Assuming a person who can stand and walk six hours in an eight hour workday and sit up eight hours in an eight hour work day with typical breaks and a lunch period. The person should not do forceful gripping or grasping. Should not use torque or vibrating tools. Should not need to climb ladders, can only occasionally climb stairs with handrails. Occasionally stoop, occasionally crouch, should

---

§ 405(g).

Because Plaintiff does not rely on the "new" material in arguing for remand and has not provided good cause for the late submission of this evidence, it cannot be considered in deciding whether remand is appropriate. Moreover, these records do not provide a basis for reconsideration of the ALJ's decision, even assuming that Plaintiff had provided good cause for the tardy submission. The Sentence Six material contains copies of records already considered by the ALJ and thus do not constitute "new" evidence (Tr. 314-316). Other records, while "new," would tend to undermine, rather than support a disability finding (Tr. 305-313).

[3]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

-7-

not need to crawl.  Assume a person who is limited to frequent handling, fingering, feeling, and reaching.  Person should not need to reach above shoulder level or behind the back.  Person should not be exposed to hazards or to vibration (Tr. 49).

The VE found that the above limitations would preclude Plaintiff's past relevant work as a job setter but would allow for the exertionally light, unskilled work of an usher (4,400 positions in the regional economy); counter clerk (3,200); and information clerk (2,500) (Tr. 49).  The VE testified that the hypothetical individual would be allowed up to one absence each month (Tr. 50).  He stated that his testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT") (Tr. 50).

### D.  The ALJ's Decision

Citing the medical records, ALJ Sobrino found the severe impairments of degenerative disc disease and CTS, but that neither condition met or equaled a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 26).  The ALJ determined that Plaintiff had the  Residual Functional Capacity ("RFC") for light work with the following additional restrictions:

> [L]ifting, carrying, pushing and pulling up to 10 pounds occasionally and up to 5 pounds frequently, using both hands; standing/walking up to 6 hours and sitting up to 8 hours in an 8-hour workday, with typical breaks and a lunch period; no forceful gripping or grasping; no use of torque or vibrating tools; no crawling or ladder climbing; occasionally climbing of stairs (with handrails); occasional stooping and crouching; frequent handling, fingering, feeling and reaching, but with no reaching above shoulder level or behind the back; no exposure to hazards; and no exposure to vibration (Tr. 26).

Citing the VE's testimony, the ALJ determined that while Plaintiff was unable to

perform her past relevant work as a job setter, she could work as an usher, counter clerk, and information clerk (Tr. 30-31).

The ALJ discounted Plaintiff's allegations of disability, citing February, 2010 physical therapy notes showing a reduction of symptoms (Tr. 28). The ALJ noted that Plaintiff did not require the use of a cane and limited her medication use to Aleve on an "as needed basis" (Tr. 26- 28). She cited Dr. Friedman's finding that Plaintiff experienced a full range of cervical motion and intact fine manipulative skills (Tr. 28-29). The ALJ noted that during the consultative examination, Plaintiff's "[g]ross grip strength was decreased bilaterally 'due to apparent submaximal effort'" (Tr. 29, 287). She also cited Dr. Friedman's finding that Plaintiff demonstrated a normal gait "[w]hen ambulating outside the doctor's building" (Tr. 29).

## III.   STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way,

without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV.    FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the

-10-

residual functional capacity to perform specific jobs existing in the national economy."

*Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V. ANALYSIS

### The Credibility Determination

Plaintiff argues that the ALJ erred by discounting her claims of physical limitation. *Plaintiff's Brief* at 6-15, *Docket #9* (citing *Felisky v. Bowen,* 35 F.3d 1027 (6th Cir. 1994)). On a related note, Plaintiff argues that the erroneous rejection of her testimony also invalidates the VE's job findings, which she contends were based on an incomplete set of hypothetical limitations. *Id.* at 9-10.[4]

The credibility determination, guided by SSR 96-7p, describes a two-step process for evaluating symptoms. "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 1996 WL 374186 at *2. The second

---

[4]

Plaintiff's brief also contains a recitation of the law pertaining to the analysis of a treating source's disability opinion. *Plaintiff's Brief* at 13-15. However, he does not cite any treating source who found Plaintiff disabled. The transcript shows that while Dr. Tarakiji stated in September, 2009 that he would "support [Plaintiff's] application" for disability, it appears from the context of his statement that he would, at best, support her claim that she was unable to perform her *former* job at General Motors, given that Plaintiff had not yet applied for DIB (Tr. 299). This is not incompatible with the ALJ's finding that Plaintiff was unable to perform her past relevant work. The neurologist's statement cannot reasonably be interpreted to contradict the ALJ's finding that Plaintiff was capable of a significant range of light work.

-11-

prong of SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the testimony must be evaluated "based on a consideration of the entire case record." *Id.* [5]

Plaintiff does not contest the Step Two finding that degenerative disc disease and CTS created workplace limitations, but argues in effect that the ALJ erred in rejecting the professed degree of limitation (Tr. 26). She contends that the ALJ ought to have adopted her testimony that she was unable to walk, stand, or sit for more than 15 minutes at a time and experienced significant limitations in range of motion (Tr. 41-44).

Substantial evidence easily supports the ALJ's credibility determination. Plaintiff's claims of disabling neck, hip, knee, neck, and upper extremity pain stand at odds with imaging studies and clinical reports showing either minor abnormalities or completely normal results (Tr. 179-183, 269, 297). The ALJ noted that Plaintiff's alleged degree of physical limitation

---

[5]In addition to an analysis of the medical evidence, C.F.R. 404.1529(c)(3) lists the factors to be considered in making a credibility determination:

 (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms ... and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

was undermined by Dr. Friedman's finding that she limped during a consultative examination, but walked without problems when she believed that she was not being observed (Tr. 287). Dr. Friedman's April, 2010 observation that Plaintiff's put forth "submaximal effort" when asked to demonstrate grip strength is consistent with a September, 2008 record stating that Plaintiff "was not putting out maximal effort during pinch/grip testing" (Tr. 223). Plaintiff's acknowledgment that she was able to "engage in door to door ministry" three days each week also casts doubt on her claim that she was unable to stand or walk for more than 15 minutes at a stretch (Tr. 156). Because the ALJ's credibility determination is generously supported by the record and does not contain erroneous findings, it should remain undisturbed. *Walters v. Commissioner of Social Sec.,* 127 F.3d 525, 531 (6th Cir. 1997); *Anderson v. Bowen* 868 F.2d 921, 927 (7th Cir. 1989)(*citing Imani v. Heckler,* 797 F.2d 508, 512 (7th Cir.1986))(An ALJ's "credibility determination must stand unless 'patently wrong in view of the cold record'").

Substantial evidence also supports the exclusion of Plaintiff's unsubstantiated limitations from the hypothetical question. Evidence supporting the credibility determination serves to defeat her argument that her all of her professed limitations ought to have been included in the hypothetical question to the VE. *See Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 118-119 (6th Cir.1994)(ALJ not obliged to include rejected allegations in the hypothetical limitations posed to the VE). Despite record evidence supporting the imposition of less restrictive limitations, the hypothetical question to the VE

-13-

and RFC found in the administrative opinion limits Plaintiff to lifting 10 pounds and only occasional stooping, crouching, and the climbing of stairs (Tr. 26, 48-49).

I note in closing that while Plaintiff has not presented a particularly strong case for benefits, my recommendation should not interpreted to trivialize her physical problems.  The ALJ's determination is nonetheless well within the "zone of choice" accorded to the fact-finder at the administrative hearing level and thus should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## VI.   CONCLUSION

I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this  Report and Recommendation must be filed  within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

-14-

Within 14 days of service of any objecting party's timely filed objections, the opposing

party may file a response.  The response shall be not more than 20 pages in length unless by

motion and order such page limit is extended by the court.  The response shall

address specifically, and in the same order raised, each issue contained within the objections.


s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated:  October 29, 2013


I hereby certify that a copy of the foregoing document was sent to parties of record on
October 29, 2013, electronically and/or by U.S. mail.

s/Carolyn Ciesla for Michael Williams
Case Manager to the
Honorable R. Steven Whalen

-